# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**AISHA WILLIAMS**,

        Plaintiff,

    v.

**DISTRICT OF COLUMBIA**,

        Defendant.

Civil Action No. 22-cv-2060 (TSC)

## <u>MEMORANDUM OPINION</u>

On July 13, 2022, Plaintiff Aisha Williams sued the District of Columbia under Title VII of the Civil Rights Act of 1964 ("Title VII") and the District of Columbia Human Rights Act, D.C. Code Ann. § 2-1401 ("DCHRA"), alleging race and gender discrimination and retaliation. She also brings a hostile work environment claim.[1] After this court denied Defendant's Motion for Summary Judgment, *see* March 4, 2024 Min. Order, Defendant again moved for summary judgment on April 17, 2024, Def.'s Mot. for Summ. J. ("Def.'s MSJ"), ECF No. 23. For the reasons explained below, the court will GRANT Defendant's renewed motion for summary judgment.

## I.      BACKGROUND

### A.  Plaintiff's Employment History at D.C. Health

Plaintiff, a Black woman, began working at the D.C. Department of Health ("D.C. Health"), Health Emergency Preparedness and Response Administration ("HEPRA") as an intern

---

[1] While her Amended Complaint does not contain a separate hostile work environment count, Plaintiff raises this cause of action in her discussions under Count I (DCHRA) and Count II (Title VII). *See* Am. Compl., ECF No. 5 ¶¶ 12, 16.

in 1996.  Am. Compl. ¶ 7; Def.'s Statement of Undisputed Material Facts ("SOF"), ECF No. 23 ¶

11.[2]  She was previously a Grade 14 Supervisory Public Health Advisor at HEPRA, but was

promoted on May 15, 2016, to a Grade 15 Supervisory Public Health Advisor.  SOF ¶¶ 8–9.  On

July 8, 2018, Plaintiff voluntarily left that management role for her current position as a Grade 14

Emergency Preparedness Planning Specialist.  *Id.* ¶ 10.

D.C. Health is divided into six administrative bodies, including HEPRA.  *Id.* ¶¶ 2–3.

HEPRA's mission is, in part, to "plan, implement, and direct public health emergency

preparedness and response" for Washington, D.C.  *Id.* ¶ 4.  Accordingly, HEPRA played a major

role in D.C.'s COVID-19 response.  *Id.* ¶ 5.

### i.      2018 Equal Employment Opportunity Commission ("EEOC") Charge

Around October 19, 2018, Plaintiff submitted an Equal Employment Opportunity

Commission Charge ("EEOC") of Discrimination against then-Senior Deputy Director Paul Duray

for race discrimination.  SOF ¶ 13; Am. Compl. ¶ 9.  Duray eventually resigned on November 6,

2020.  SOF ¶ 14.  The case was eventually closed, and no further action was taken.  Am. Compl.

¶ 10.

### ii.     Fiscal Year 2020 Performance Assessment and Salary Increase Request

Plaintiff's work responsibilities shifted during the COVID-19 pandemic to help address

D.C.'s COVID-19 response.  *See* SOF ¶¶ 43–44.  During the fiscal year 2020 performance

assessment period, Daniel Burke, a Program Manager who became Plaintiff's supervisor in

October 2019, rated Plaintiff 3.10 out of 5 for her job performance from October 1, 2019, through

September 30, 2020.  *Id.* ¶ 15.  This rating is considered "average."  *Id.* ¶ 19.  Burke "followed the

---

[2] Unless otherwise noted, the court takes Defendant's Statement of Undisputed Facts as true, as
Plaintiff confirmed, and did not rebut, most of the facts.

evaluation instructions" and rated her based on her performance plan, which was not revised in light of her newer COVID-19 duties. *Id.* Because Plaintiff's performance plan was developed before COVID-19, she could not complete her usual job functions. *Id.* ¶¶ 16, 18.

Plaintiff requested a re-evaluation by the Reconsideration and Resolution Committee, which increased her rating to 4.75, which was rounded up to 5. *Id.* ¶¶ 20–21; Am. Compl. ¶ 42. Plaintiff adds that she received the highest possible rating and won an award, the Morris & Gwendolyn Cafritz Award, which honors "the best in public service." Pl.'s Resp. to SOF, ECF No. 26-1 ¶ 21; *id.* Ex. 1, ECF No. 26-2.

In 2020, Plaintiff earned $209,125.71, which included a 3.5% pay increase, overtime, per diem payments, and other payments for work on the COVID-19 response. SOF ¶¶ 22–23. Her base salary at the time was $137,225.00. *Id.* ¶ 22. On February 16, 2021, following her performance re-evaluation, Plaintiff emailed HEPRA's Chief Medical Officer ("Officer") to request a "merit based (10% increase) or quality salary increase" for fiscal year 2020. *Id.* ¶ 24. The parties dispute whether an employee may request a salary increase for themselves. *Id.* ¶¶ 27–29; Pl.'s Resp. to SOF ¶¶ 27–29.

On February 19, 2021, the Officer responded in writing, thanking Plaintiff for her hard work and accomplishments and noting that he had asked Melisssa Dunkerson (former Deputy Director for Operations) "to check with HR on the process, policy and budget availability of merit/performance-based raises." SOF ¶ 30. On March 26, 2021, the Officer followed up on Plaintiff's "request for a Quality Step Increase," stating that "after discussing with leadership, this has not been approved." *Id.* ¶ 31; Ex. 3., ECF No. 26-4 at 1. The parties disagree on the stated reason for the denial. *Id.* ¶ 32; Pl.'s Resp. to SOF ¶ 32.

### iii.     Work Reassignments in January 2021 and March 2021

In January 2021, Plaintiff returned to the job she held before her temporary COVID-19 assignment to help catch up on "program backlog and transition District sites to steady-state operations with contracted staff."  SOF ¶ 36.  Because Plaintiff had significant operational expertise and interest in special projects, a portion of her time went to support a vaccine campaign supervised by Trevor Rhodes, a Grade 14 manager.  *Id.* ¶¶ 22, 37.  A few months later, in March 2021, Plaintiff was transferred to a new HEPRA assignment.  *Id.* ¶ 42.  Her job duties changed to support the needs of a separate division, the Special Operations, Logistics, and Training Division, "as the response to COVID-19 matured and long-term programmatic needs were identified."  *Id.* ¶¶ 27, 42–43.  Plaintiff's compensation and position as an Emergency Preparedness Planning Specialist remained the same, but she no longer worked in her original division.  *See id.* ¶¶ 32, 45.

### iv.     Procedural History

Around September 2, 2021, Plaintiff filed a Charge of Discrimination with the EEOC and the D.C. Officer of Human Rights, alleging discrimination and retaliation based on race, color, and sex.  Am. Compl. ¶ 56.  On June 6, 2022, the EEOC issued a Right to Sue Letter, which Plaintiff received around August 19, 2020.  *Id.* ¶¶ 59–60.

On July 13, 2022, Plaintiff filed this suit, alleging race and gender discrimination and retaliation.  Compl., ECF No. 1.  She also brought a hostile work environment claim based on race and gender.  *Id.; see supra* n. 1.  On September 6, 2022, Defendant moved to dismiss, Def.'s Mot. to Dismiss, ECF No. 4, and on September 21, 2022, Plaintiff filed an Amended Complaint, Am. Compl.  On August 16, 2023, Defendant moved for summary judgment.  Def.'s Mot. Summ. J., ECF No. 15.

On March 4, 2024, the court denied Defendant's motion for summary judgment from the bench, citing various deficiencies in the parties' briefing. *See* March 4, 2024 Min. Order. Among other things, the court found that the briefings did not meet the standards set forth in Local Civil Rule 7(h)(1) or Federal Rule 56(c)(1)(A), because the parties failed to support their factual positions with any meaningful, or even correct, citations to the record. On April 17, 2024, Defendant again moved for summary judgment.

## II.    LEGAL STANDARD

A court grants summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A court determines which facts are "material" by looking at the substantive law on which each claim rests. *Anderson*, 477 U.S. at 248. A "genuine issue" is one whose resolution could establish an element of a claim or defense and therefore affect the outcome of the action. *Id.* at 248; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. The moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

A moving party may succeed on summary judgment by pointing to the absence of evidence proffered by the nonmoving party, *id.*, while the nonmoving party may defeat summary judgment if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct

testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675. But the nonmoving party must establish more than "[t]he mere existence of a scintilla of evidence" in support of its position. *Anderson*, 477 U.S. at 252.

## III.     ANALYSIS

### A. Disparate Treatment under Title VII and DCHRA

Title VII and the DCHRA prohibit employers from discriminating against an employee based on, among other things, race and gender. 42 U.S.C. § 2000e–2(a); D.C. Code § 2–1402.11(a); *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 576 (D.C. Cir. 2010). Title VII and the DCHRA are similar and generally interpreted consistently. *See, e.g.*, *Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013) (noting court considers plaintiff's DCHRA claims "in the same way we analyze Title VII claims."); *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 296 (D.C. Cir. 2015) (discussing how analysis of plaintiff's claims under Title VII and DCHRA are the same and thus, the "Title VII claims and DCHRA claims thus rise and fall together.").

Where, as here, a plaintiff has offered indirect evidence of discrimination, the court applies the familiar burden-shifting framework explained in *McDonnell Douglas Corp. v. Green*, 411 U.S. 802–03 (1973), to determine whether summary judgment is appropriate. *Gaujacq*, 601 F.3d at 576. Under that framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination or retaliation. *See Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252–53 (1981). In disparate treatment cases, the plaintiff must show that: (1) she belongs to a protected class, (2) she experienced an adverse employment action, and (3) the adverse employment action yields an inference of discrimination. *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005)

(internal quotation marks and citation omitted).  If the plaintiff meets her burden of establishing a *prima facie* case, the burden then shifts to the employer to "proffer admissible evidence showing a legitimate, nondiscriminatory, clear, and reasonably specific explanation for its actions." *Figueroa v. Pompeo*, 923 F.3d 1078, 1092 (D.C. Cir. 2019).

Once an employer comes forward with a legitimate, non-discriminatory reason for the challenged employment action, however, the court need not "*and should not*" analyze the *prima facie* case.  *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original).  Instead, the court need only ask if "the evidence creates a material dispute on the ultimate issue." *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1114 (D.C. Cir. 2016) (citing *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009)).  The court's focus, then, is on whether the plaintiff "produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the [plaintiff] on a prohibited basis." *Brady*, 520 F.3d at 494.

### 1. Work Reassignments in January 2021 and March 2021

"To make out a Title VII discrimination claim, a [plaintiff] must show some harm respecting an identifiable term or condition of employment," *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354–55 (2024), such as a diminution in pay, benefits, or work hours accompanied by a reassignment.  *See Mungin v. Katten Muchin & Zavis,* 116 F.3d 1549, 1556–57 (D.C. Cir. 1997); *accord Stewart v. Evans,* 275 F.3d 1126, 1135 (D.C. Cir. 2002) (holding that removal of job responsibility did not constitute adverse employment action "because there was no change in [the plaintiff]'s job position, grade, pay or benefits"); *Baloch v. Norton,* 355 F. Supp. 2d 246, 257 (D.D.C. 2005) (finding an adverse action if "the plaintiff, after years of substantive work, suddenly [finds herself] stripped of all duties and atrophying in bureaucratic oblivion").

Here, to present a viable claim of employment discrimination under Title VII, Plaintiff must show that her work reassignments in January 2021 and March 2021 constituted adverse employment actions—meaning that her work reassignments brought about some "disadvantageous" change in an employment term or condition. *Muldrow*, 601 U.S. at 354. Plaintiff has not done so.

Plaintiff's job duties changed to support HEPRA's changing needs during the COVID-19 pandemic, but her title and compensation remained the same. *See* ¶¶ SOF 35–44. In her Amended Complaint, Plaintiff alleges that the "practical effect" of her work reassignments was to "demote [her] from the job for which she was hired" given that her "job duties and responsibilities [were] significantly curtailed." Am. Compl. ¶¶ 34–35. But she offers virtually nothing to support this. She does not provide any comparator evidence, does not explain what her responsibilities were before her reassignments, and does not explain why her newer responsibilities did not align with her role. Nor does she point to any policy suggesting that such reassignments were unusual.

Defendant argues that Plaintiff's work reassignments were consistent with her role. Def.'s MSJ at 20–23. Indeed, Plaintiff does not challenge Defendant's statement of facts regarding her reassignments. *See* Pl.'s Resp. to SOF ¶¶ 35–45 ("confirming" all facts). She agrees that she had expertise and interest in special projects, *id.* ¶¶ 22, 37, that the division also received staff from other HEPRA divisions, *id.* ¶ 44, and that her role was consistent with responding to public health emergencies, *id.* ¶ 35 (the role of an Emergency Preparedness Planning Specialist is to, in part, "ensure that DC Health has systems and processes in place to respond to and manage the public health and medical consequences of hazards and emergencies."). Consequently, nothing in the record suggests that Plaintiff's reassignments "in any way affected her pay, grade, benefits, or opportunities for advancement," as needed to show an adverse employment action. *Jones v. Bush*,

160 F. Supp. 3d 325, 347 (D.D.C. 2016), *aff'd*, No. 16-5103, 2017 WL 2332595 (D.C. Cir. Feb. 21, 2017).

Even if Plaintiff had shown that she suffered an adverse employment action and made out a *prima facie* case, because Defendant offers a legitimate, non-discriminatory reason for her reassignments, Plaintiff must offer sufficient evidence from which a reasonable jury could find that Defendant's reasons were a pretext for discrimination. Plaintiff offers none.

As noted, in her opposition Plaintiff provides no evidence to rebut Defendant's proffered reasons for her reassignments, nor does she explain how the reassignments brought about any "disadvantageous change in her employment terms or conditions." *Muldrow*, 601 U.S. at 354 (internal quotation marks and citation omitted). In fact, most of her discussion centers on her salary request denial. In her discussion on disparate treatment, Plaintiff mentions reassignment in one sentence, stating only that "forced changes to Plaintiff's job description and work location are also adverse employment actions," before moving on to discuss compensation and diminution in pay. Pl.'s Opp'n at 4. She does not mention reassignment at all in her retaliation discussion. *See id.* at 8.

Because Plaintiff fails to produce sufficient evidence for a reasonable jury to find that Plaintiff suffered an adverse employment action or that Defendant's asserted reason was not the actual reason for her work reassignments, the court grants summary judgment as to Plaintiff's disparate treatment claim as to her work reassignments.

### 2. Salary Increase Denial

Plaintiff contends that she was entitled to a salary increase following her performance re-evaluation, which bumped her performance score from a 3.75 to a 4.75, then rounded up to a 5. *See* Pl.'s Resp. to SOF ¶ 27; Pl.'s Opp'n at 4.

Defendant counters that Plaintiff's request was declined because "she was paid over $200,000 in 2020 and was fairly compensated." SOF ¶ 32. Defendant provides a chart and corroborating evidence of Plaintiff's 2020 pay, showing that in 2020 she earned a total of $209,125.71—more than her base salary of $137,225.00. *Id.* ¶ 32; Def.'s MSJ, Ex. A at 28. Plaintiff earned $60,000 in overtime and received other payments for her work supporting the COVID-19 response. *Id.* Defendant contends that a raise is not guaranteed, and D.C. Health never promised Plaintiff one. SOF ¶¶ 33–34; Def.'s MSJ, Ex. B, Williams Dep. 14:01–14:21; 15:01. Defendant also points out that Plaintiff's request was not a recommendation from her manager, and she apparently did not follow the proper procedures in requesting a raise. But Defendant does not claim that Plaintiff's request was denied because it was improper—only that Plaintiff was already fairly compensated. *See* SOF ¶¶ 23, 24, 27, 32; Def.'s MSJ, Ex. D, ECF No. 23-1.

Plaintiff contends that Defendant did not initially give a reason for denying her salary increase and has offered shifting explanations throughout the litigation for why it denied her request, first explaining that the denial was for budgetary reasons and now asserting that she was fairly compensated. Pl.'s Opp'n at 5–7; Pl.'s Resp. to SOF ¶ 32. Plaintiff argues that the fact that she earned over $200,000 in 2020 "has nothing to do" with her request to increase her base salary for 2021 and that this shifting explanation is evidence of pretext. Pl.'s Opp'n at 6.

In opposing summary judgment on her salary request denial claim, Plaintiff focuses on her *prima facie* case. *See* Pl.'s Opp'n at 5–7. Problematically for Plaintiff, however, Defendant has proffered a legitimate, nondiscriminatory explanation for why it denied her salary request and so the *prima facie* case is an "unnecessary sideshow." *See Adeyemi v. Dist. of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008) (quoting *Brady*, 520 F.3d at 490). At this stage, to successfully undermine Defendant's argument as a pretext for discrimination, Plaintiff must show "*both* that

the reason [for not increasing her salary] was false *and* that discrimination . . . was the real reason." *Weber v. Battista,* 494 F.3d 179, 186 (D.C. Cir. 2007) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (2007)).

It is true that "changes and inconsistencies" in an employer's given reasons for a decision may provide evidence of pretext. *Allen v. Johnson*, 795 F.3d 34, 40 (D.C. Cir. 2015); *see* Brady, 520 F.3d at 495 n. 3. And here, Defendant changed its stated reasons for denying the salary request. But "[s]uccessfully attacking an employer's proffered reason 'alone will not always suffice to permit an inference of discrimination.'" *Allen*, 795 F.3d at 40 (quoting *Aka v. Wash. Hosp. Ctr.,* 156 F.3d 1284, 1292 (D.C. Cir. 1998)).

A plaintiff may support an inference that her employer's stated reason for the adverse employment action was pretextual by pointing to evidence including "the employer's better treatment of similarly situated employees outside the plaintiff's protected group, its inconsistent or dishonest explanations, its deviation from established procedures or criteria, [] the employer's pattern of poor treatment of other employees in the same protected group as the plaintiff, or other relevant evidence that a jury could reasonably conclude evinces an illicit motive." *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015). A plaintiff may also show pretext by offering evidence that the "employer is lying about the proffered justification." *Royall v. Nat'l Ass'n of Letter Carriers, AFL–CIO,* 548 F.3d 137, 144 (D.C. Cir. 2008). Plaintiff offers none of this.

Instead, Plaintiff submits an affidavit in support of her assertion that other HEPRA employees received additional compensation in 2021 while Plaintiff did not. She states that within several months of her request, "at least [six] other employees within HEPRA . . . received substantial pay increases or bonuses within the same time frame and fiscal year that [Plaintiff's] pay increase was denied, including Marie-Clare Brown, Arlene Thomas, Cynthia Person Harris,

Daniel Burke, and Melissa Dunkerson.  *See* Pl.'s Resp. to SOF ¶ 1-2; Pl.'s Opp'n, Ex. 4, Williams Affidavit; Pl.'s Opp'n, Ex. 5, FY 2021 Redacted List of Employees Receiving Add'l Compensation.

The fifth person, Patrick Ashley, HEPRA's Senior Deputy Director and a White male, also received a salary increase.  Pl.'s SOF ¶ 1.  During his deposition, Ashley stated that the executive leadership team discussed not awarding a base salary increase to anyone in 2021, but later, Ashley confirmed that he himself received "a substantial pay increase" in 2021.  *See* Pl.'s Opp'n, Ex. 2, Dep. Patrick Ashley Tr. ("Dep. Ashley") at 24:4–24:10, 64:4–64:16.  Ashley admits that the increase was not something that he requested or initiated.  *Id.* at 64:4–64:16.

While Plaintiff has shown some evidence of shifting explanations and different treatment, she fails to produce enough evidence to defeat summary judgment.

First, although Plaintiff provides a list of employees who received additional compensation, she presents no facts to show that those employees were similarly situated to her. *See George v. Leavitt,* 407 F.3d 405, 412 (D.C. Cir. 2005) (illustrating that a plaintiff can establish an employer's discriminatory motive by demonstrating that she was treated differently than similarly situated employees).  And although Ashley did receive additional compensation, Plaintiff concedes that Ashley is her "immediate supervisor."  Pl.'s Opp'n at 6.  Plaintiff does not attempt to show that all "relevant aspects" of their employment situations were "nearly identical" at the time of the disputed events.  *Neuren v. Adduci, Mastriani, Meeks & Schill,* 43 F.3d 1507, 1514 (D.C. Cir. 1995).

Second, Plaintiff does not point to evidence to show that her employer deviated from established procedures or criteria, or other relevant evidence that a jury could reasonably conclude shows an improper motive.  It is true that Plaintiff received a high performance assessment and an

award for her work.  But according to Ashley, "a lot of people did [] exceptional work during COVID," and "a lot of them received extra compensation for their exceptional work," but "from a long-term fiscal financial spending pressure, it wasn't something that D.C. Health had the budgetary resources to be able to do" heading into 2021.  Dep. Ashley at 21:20–22:4.

Even if Plaintiff showed that budgetary reasons were not the actual reason for her denial, she would still have to demonstrate that the actual reason was discriminatory.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 514 (1993); *Brady*, 520 F.3d at 494.  In her opposition, Plaintiff states only that "Mr. Ashley is a white male" and she "is a Black female," Pl.'s Opp'n at 7, but she provides no information about the gender or race of the five other HEPRA employees who received additional compensation (although based on their names, four out of the five appear to be female). Plaintiff does not provide evidence to show that the real reason Defendant refused to increase her salary was because of her sex or race.  In asking whether "the evidence creates a material dispute on the ultimate issue," *Wheeler*, 812 F.3d at 1114 (citing *Jones*, 557 F.3d at 678), the court finds that it does not.  Because Plaintiff cannot demonstrate that Defendant's explanation is false or that the real reason for Defendant's actions was discriminatory, the court grants summary judgment as to Plaintiff's disparate treatment claim for her salary increase denial.

## B.  Retaliation Claims

The *McDonnell* burden shifting similarly applies to retaliation claims.  *See supra* Section III(A).  The relevant inquiry in such claims is whether an employee has produced sufficient evidence for a reasonable jury to conclude that the defendant's asserted non-retaliatory reason for an adverse employment action was not the actual reason, and that instead the defendant was intentionally retaliating against the plaintiff for protected activity.  *Wheeler v. Georgetown Univ.*

*Hosp.*, 812 F.3d 1109, 1114 (D.C. Cir. 2016); *see Jones*, 557 F.3d at 678.  If so, "the court should proceed to the question of retaliation." *Taylor v. Solis*, 571 F.3d 1313 at 1320 n.* (D.C. Cir. 2009).

To prevail on a retaliation claim, Plaintiff must show that "she engaged in protected activity, as a consequence of which her employer took a materially adverse action against her," *Weber v. Battista,* 494 F.3d 179, 184 (D.C. Cir. 2007) (citation omitted), and "that the adverse personnel action took place shortly after that activity." *Holbrook v. Reno*, 196 F.3d 255, 263 (D.C. Cir. 1999) (quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985)).  A materially adverse action is one that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 57 (2006).  Plaintiff contends that Defendant retaliated against her by reassigning her job responsibilities and denying her salary increase after she engaged in protected activity—that is, when she submitted an EEOC charge in 2018 and helped other employees submit their own EEOC charges.

To begin, Plaintiff undisputably engaged in protected activity when she filed her EEOC charge and helped others do the same.  *Beyene v. Hilton Hotels Corp.*, 815 F. Supp. 2d 235, 247 (D.D.C. 2011), *aff'd*, 573 F. App'x 1 (D.C. Cir. 2014) (an activity is "protected" for purposes of a Title VII claim "if it involves opposing alleged discriminatory treatment by the employer or participating in legal efforts against the alleged treatment.").  Plaintiff appears to contend that her complaints about her performance evaluation also constituted protected activity.  Am. Compl. ¶¶ 75–78.  But she points to nothing in the record or proffer evidence to support that contention.  And even if she did, Plaintiff's retaliation claim as to her work reassignment fails for the same reasons it failed under her disparate treatment claim—she fails to show that she suffered an adverse employment action.

A transfer which strips an employee of responsibilities can be considered a materially adverse employment action, as its consequences may affect the terms, conditions, or privileges of the employee's employment.  *See Geleta v. Gray*, 645 F.3d 408, 411–12 (D.C. Cir. 2011) (finding a reasonable jury could conclude that a transfer resulting in "a complete loss of supervisory responsibilities" and "narrower and less important programmatic responsibilities" than plaintiff held in their previous position is a materially adverse employment action).  "Where, as here, the plaintiff alleges retaliation based on a reassignment, the fact-finder must compare the position the plaintiff held before the transfer to the one [s]he holds afterwards."  *Pardo-Kronemann*, 601 F.3d at 607.

As discussed in *supra* Section III(A)(1), Plaintiff fails to support her claim that her job reassignments were adverse employment actions "such that a reasonable trier of fact could find objectively tangible harm."  *Ginger v. District of Columbia*, 527 F.3d 1340, 1343 (D.C. Cir. 2008) (quoting *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002)).  Though her job duties changed, nothing in the record suggests that she suffered any identifiable harm, such as lost opportunities for future career advancement or worsened job prospects due to the reassignment.  *See Wiley v. Glassman*, 511 F.3d 151, 161 (D.C. Cir. 2007) (finding plaintiff did not suffer adverse employment action where plaintiff "offered nothing" to establish that a reduction in airtime as a broadcaster could affect her compensation, grade, or opportunity for future advancement).  Plaintiff may be dissatisfied with the reassignments and change in supervisors, but "such intangible harms d[o] not rise to the level of adverse employment actions, and, therefore, d[o] not support a Title VII retaliation claim."  *Jones*, 160 F. Supp. 3d at 344, *aff'd*, No. 16-5103, 2017 WL 2332595 (D.C. Cir. Feb. 21, 2017).  For the same reasons discussed in *supra* Section III(A)(1), the court will grant summary judgment as to Plaintiff's work reassignment retaliation claim.

The court will also grant summary judgment as to Plaintiff's salary increase denial because Plaintiff fails to establish an essential element—temporal proximity. To satisfy the third element of a *prima facie* case of retaliation, Plaintiff must show that the retaliatory act took place shortly after the protected activity. *Holbrook*, 196 F.3d at 263. Thus, while a salary increase denial can be an adverse employment action and the "loss of a bonus that is worth hundreds of dollars is not a petty detriment," *see Russell v. Principi*, 257 F.3d 815, 819 (D.C. Cir. 2001), Plaintiff must still establish a causal connection between her protected activity and these adverse actions. *Baldrige*, 759 F.2d at 86.

As discussed earlier, Plaintiff engaged in protected activity in October 2018, which was resolved in 2019. SOF ¶ 13; Pl.'s Opp'n. at 8. In early 2021, her supervisor Burke rated her based on her job performance from October 1, 2019, through September 30, 2020. SOF ¶ 15. Plaintiff argues that while "these dates are not very close in time, they are less than 2 years apart and the management officials with the decision making authority all knew about the prior change." Pl.'s Opp'n at 8.

Although these officials were aware of Plaintiff's prior protected activity, the temporal proximity between the protected activity and the alleged retaliatory act—at least thirteen months— is more than not "very close"—it is too long to support an inference of retaliation. *See Keeley v. Small*, 391 F. Supp. 2d 30, 46 (D.D.C. 2005) (finding close temporal proximity to protected activity where alleged retaliatory actions occurred over the same period as plaintiff's administrative actions); *Farris v. Clinton*, 602 F. Supp. 2d 74, 92 (D.D.C. 2009) (six months is too long to establish temporal proximity); *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (noting that a three- or four-month period between an adverse action and protected activity is insufficient to show a causal connection, and a twenty-month period suggests "no causality at

all"). Consequently, Plaintiff has not established a sufficient causal connection between her protected activity and the alleged retaliatory action to make out a retaliation claim. The court will therefore grant summary judgment as to Plaintiff's salary increase denial retaliation claim.

### C. Hostile Work Environment Claim

Plaintiff's only allegations in her Amended Complaint regarding her hostile work environment claim are that "HEPRA generally fosters an environment that is specifically hostile to the promotion of people of color" and "HEPRA [] generally fosters an environment that is hostile to feedback." Am. Compl. ¶¶ 12, 16. To establish a claim for hostile work environment, Plaintiff must establish that the conduct about which she complains was "of such severity or pervasiveness as to alter the conditions of employment. . .and create an abusive working environment." *Menoken v. Dhillon*, 975 F.3d 1, 6 (D.C. Cir. 2020) (quoting *Braird v. Gotbaum*, 792 F.3d 166, 168–69 (D.C. Cir. 2015).

During its bench ruling on March 4, 2024, the court warned Plaintiff that the allegations in her Amended Complaint were insufficient to support a hostile work environment claim and that if the parties submitted further briefing, Plaintiff had the burden of coming forward with factual evidence supporting her claims. The court further warned that recitation of legal conclusions would not suffice.

Plaintiff opposes summary judgment as to her Title VII, DCHRA, and retaliation claims, but she does not address her hostile work environment claim or respond to Defendant's argument on this claim in her Opposition. Consequently, the court treats Defendant's argument as to the hostile work environment claim as conceded. *See Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised

by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (citing *FDIC v. Bender*, 127 F.3d 58, 67–68 (D.C. Cir. 1997)); *see also Hajjar–Nejad v. George Washington Univ.*, 37 F. Supp. 3d 90, 128 (D.D.C. 2014) ("[A] Plaintiff is not entitled to rely on the allegations in h[er] Complaint to create a genuine issue of material fact at the summary judgment stage.") (citing *Anderson*, 477 U.S. at 249). Based on this concession, the court concludes that Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment will be GRANTED.

Date: March 31, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge